1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CHRISTOPHER G. VALENCIA,            No.  1:22-cv-00569 GSA (PC)

12                   Plaintiff,           ORDER AND FINDINGS AND
                                          RECOMMENDATIONS
13             v.
                                          ORDER VACATING SEPTEMBER 2, 2025,
14    MEDINA, et al.,                     SCREENING AND SERVICE ORDERS

15                   Defendants.          (ECF Nos. 19, 20)

16                                        ORDER FINDING THAT CLAIMS ONE
                                          AND TWO STATE CLAIMS UPON WHICH
17                                        RELIEF MAY BE GRANTED

18                                        (See ECF No. 18 at 3-4)

19                                        ORDER RECOMMENDING THAT CLAIM
                                          THREE BE DISMISSED FOR FAILURE TO
20                                        STATE A CLAIM UPON WHICH RELIEF
                                          MAY BE GRANTED
21
                                          (See ECF No. 18 at 5)
22
                                          PLAINTIFF'S OBJECTIONS TO FINDINGS
23                                        AND RECOMMENDATIONS DUE IN
                                          FOURTEEN DAYS
24

25          Plaintiff, a state prisoner proceeding pro se, has filed this civil rights action seeking relief

26    under 42 U.S.C. § 1983. Plaintiff has paid the filing fee. The matter was referred to a United

27    States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

28          Before this Court, is Plaintiff's second amended complaint ("SAC").  For the reasons

                                             1

1  stated below, and to create a clear record, the Court will vacate its September 2, 2025, screening

2  of the SAC as well as the related service order.  See ECF Nos. 19, 20.  The Court will also find

3  that Claims One and Two state claims upon which relief may be granted and as such, may be

4  served.  In addition, it will be recommended that Claim Three in Plaintiff's SAC be dismissed for

5  failure to state a claim upon which relief may be granted.  Plaintiff will have fourteen days to file

6  objections to this order.

7      I.    BACKGROUND

8          On September 2, 2025, the Court screened Plaintiff's SAC.  See ECF No. 19.  In so doing,

9  it considered Claims Two and Three together because the facts stated in each were virtually

10  identical.  Id. at 7-8.  Ultimately, the Court found that Claims One and Two had raised viable

11  Eighth Amendment failure to protect and deliberate indifference to serious medical need claims

12  against Defendant Samantha Medina, the sole defendant in this case.  Id. at 7-9.

13          On September 11, 2025, Plaintiff filed "objections" to the screening order.  ECF No. 22.

14  The Court construed the filing as a motion for reconsideration.  In it, Plaintiff argued that it was

15  improper for the Court to consider Claims Two and Three together and that he has raised a viable

16  "torture" claim in Claim Three.  See id.

17          After reviewing Plaintiff's motion the Court conceded that considering Claims Two and

18  Three together was an error.  At the same time, however, it found that Plaintiff's Claim Three – a

19  "torture" claim – failed to state a claim upon which relief could be granted.  As a result,

20  Plaintiff's motion for reconsideration was denied.

21          In light of the above, in order to maintain clarity in the docket, the Court shall vacate its

22  screening and service orders issued September 2, 2025.  It will also rescreen the SAC herein and,

23  for the reasons stated below, recommend that Claim Three be dismissed for failure to state a

24  claim upon which relief may be granted.

25      II.    SCREENING REQUIREMENT

26          The Court is required to screen complaints brought by prisoners seeking relief against a

27  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

28  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1176 (9th Cir. 2021) (citing Iqbal). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

Finally, under Federal Rules of Civil Procedure 18 and 20, the claims raised against a party in a complaint should be related. In addition, defendants should only be joined in an action if it can be alleged that they are liable for the "same transaction, occurrence, or series of transactions or occurrences" where "any question of law or fact common to all defendants will arise in the action." See Fed. R. Civ. P. 18(a) and 20(a)(2).

III.   STANDARD OF REVIEW

A.  Generally

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source

1  of substantive rights, but merely provides a method for vindicating federal rights conferred

2  elsewhere.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).

3       To state a claim under Section 1983, a plaintiff must allege two essential elements:  (1)

4  that a right secured by the Constitution or laws of the United States was violated and (2) that the

5  alleged violation was committed by a person acting under the color of state law.  See West v.

6  Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cty., 811 F.2d 1243, 1245 (9th Cir. 1987).

7       **B.  Linkage Requirement**

8       In addition, under Section 1983, a plaintiff bringing an individual capacity claim must

9  demonstrate that each defendant personally participated in the deprivation of his rights.  See Jones

10  v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  There must be an actual connection or link

11  between the actions of the defendants and the deprivation alleged to have been suffered by

12  plaintiff.  See Ortez v. Washington County, State of Oregon, 88 F.3d 804, 809 (9th Cir. 1996);

13  see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

14       Government officials may not be held liable for the actions of their subordinates under a

15  theory of respondeat superior.  Iqbal, 556 U.S. at 676 (stating vicarious liability is inapplicable in

16  Section 1983 suits).  Since a government official cannot be held liable under a theory of vicarious

17  liability in Section 1983 actions, a plaintiff must plead sufficient facts showing that the official

18  has violated the Constitution through his own individual actions by linking each named defendant

19  with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

20  Iqbal, 556 U.S. at 676.

21       **IV.  PLAINTIFF'S SECOND AMENDED COMPLAINT**

22       **A.  Facts Alleged**

23       Plaintiff, an inmate who is currently incarcerated at California State Prison – Corcoran

24  ("CSP-Corcoran"), names Sergeant Samantha Medina as the sole Defendant in this action.  See

25  ECF No. 18 at 1-2.  He contends that she failed to protect him; that she was deliberately

26  indifferent to his serious medical need, and that she tortured him in violation of his Eighth

27

28

Amendment rights,[1] when, on March 19, 2022, while "acting as the supervisor for the 3B yard at Corcoran State Prison, [she] ordered her officers to confine and lock the plaintiff within a caged yard area for recreational purposes (this is fact). Between approximately 12:15 p.m. and 12:30 p.m.-, massive volumes of chemical gas, generated from CN gas grenades detonated on the 3C yard, resulted from an excessive and reckless use of force incident on that yard (this is fact). The chemical cloud spread across the 3B yard, immediately causing pain and unwarranted agony to Plaintiff's eyes, lungs, and skin (this is fact). The plaintiff pleaded with the group of officers and Sergeant Medina for help, but instead of assisting, they laughed and retreated into the 3B program office, leaving the plaintiff behind to suffer the effects of the gas (this is fact). Under Sergeant Medina's supervision and orders, the plaintiff was left exposed in the contaminated yard for approximately 20 minutes. Once the gas dissipated from the yard enclosure, Sergeant Medina and the officers emerged from hiding and forced the plaintiff to return to his cell without providing any medical aid. Please note that the chemical gas breach was so severe that the plaintiff was unable to protect himself or escape the effects. Sergeant Medina neither protected the plaintiff nor evacuated the yard. Instead, she intentionally forced the plaintiff to remain in the yard until the gas naturally evaporated on its own." (Claim One). <u>See</u> ECF No. 18 at 3 (brackets added).

In Claim Two Plaintiff alleges, "On 3/19/22, after Sgt. Medina deliberately and intentionally left the plaintiff in a locked yard contaminated by weaponized gas, causing him to suffer, Sgt. Medina also deliberately and intentionally refused to provide or summon medical aid. Despite being fully aware that the inmate population on the yard, including the plaintiff, was exposed to CN gas from the massive volume of gas that came from 3C yard next door, Sgt. Medina ignored the situation. What makes her refusal to summon medical aid even more deliberate was the fact that the plaintiff, along with other inmates, directly asked her for medical

---

[1] In Claim One, Plaintiff also vaguely alleges that his rights under the Bill of Rights were violated by Defendant Medina. <u>See</u> ECF No. 18 at 3. The Bill of Rights consists of the first ten amendments to the United States Constitution. Plaintiff, however, provides no specific support for this claim by selecting precisely which of his rights under those amendments have been violated. Therefore, to the extent that Plaintiff may have been intending to raise additional violations of right under the first ten amendments to the Constitution, the Court does not consider the assertion herein.

1   assistance and informed her of their injuries, including respiratory problems, burning eyes, and

2   burning skin-classic symptoms of CN gas contamination. CDCR policy mandates the immediate

3   decontamination of any inmate or staff exposed to such chemicals and gas. Sgt. Medina did not

4   summon medical personnel to decontaminate the plaintiff, nor did she escort him to receive

5   medical treatment for his injuries. Instead, she told the plaintiff "No," and forced him to return to

6   his cell, where he remained for four days without medical aid, still covered from head to toe in

7   the chemical and burning gas." (Claim Two)  See ECF No. 18 at 4.

8        Finally, in Claim Three, Plaintiff alleges, "On March 19, 2022, at approximately 12:00

9   p.m., Plaintiff was confined to the 3B yard at Corcoran State Prison under the supervision of

10  Defendant Sergeant Medina.  Between approximately 12:15 p.m. and 12:30 p.m., large amounts

11  of CN gas from grenades deployed in the 3C yard spread to the 3B yard, causing extreme

12  burning, pain, and difficulty breathing for Plaintiff and other inmates.  Plaintiff immediately

13  pleaded for assistance and requested medical aid from Defendant Medina and her officers.

14  Instead of intervening, Defendant Medina and her officers retreated into the 3B program office,

15  laughing, and ordered all inmates, including Plaintiff, to remain seated in the contaminated yard

16  for approximately 20 minutes while experiencing excruciating pain.  Plaintiff was deliberately

17  tortured for 20 minutes on March 19, 2022, as Defendant Medina made no efforts to protect

18  Plaintiff, evacuate the yard, or mitigate the effects of the CN gas exposure.  Once the gas

19  dissipated, Defendant Medina and her officers ordered Plaintiff back to his cell without providing

20  any medical attention, despite Plaintiff's direct requests for aid." (Claim Three)  See ECF No. 18

21  at 5.

22        B.  Harm Caused and Remedy Sought

23   Plaintiff claims that because Defendant Medina's actions and inaction, he suffered

24  unwarranted exposure to pain; he now suffers from respiratory issues and has to use an

25  inhaler; his sleep apnea conditions have been exacerbated, and he suffers from mental anguish

26  and emotional distress.  ECF No. 18 at 3-5.   He seeks various types of monetary damages,

27  totaling $9,000,000.00, as well as any other relief that the Court deems just and proper.   Id. at

28  7.

V.    APPLICABLE LAW

A.  Eighth Amendment Duty to Protect

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 199-200 (1989).  "[An] affirmative duty to protect arises . . . from the limitation which [the State] has imposed on his freedom to act on his own behalf." Id. at 200 (brackets added).

The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner.  See Farmer v. Brennan, 511 U.S. 825, 832-33 (citations omitted); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (stating classification type does not relieve jail officials of duty to provide for inmate's safety).  Specifically, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  Farmer, 511 U.S. at 833 (citation omitted) (quotation marks omitted).

To state a cognizable Eighth Amendment claim under a failure to protect theory, a prisoner must reasonably allege that a correctional official knew of but disregarded an excessive risk to his health or safety.  Farmer, 511 U.S. at 837.  "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks and emphasis omitted) (citations omitted).  The deprivation alleged must be objectively sufficiently serious, and there must be evidence which shows that a defendant acted with a "sufficiently culpable state of mind." Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  In addition, the wanton infliction of pain a prisoner experiences must be inconsistent with "contemporary standards of decency." See Hudson v. McMillian, 503 U.S. 1, 8 (1992) (citations and internal quotation marks omitted).

B.  Eighth Amendment Deliberate Indifference to Serious Medical Need

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted).  "[A] prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation alleged must be, objectively, sufficiently serious; a

7

1    prison official's act or omission must result in the denial of the minimal civilized measure of

2    life's necessities." Id. at 834 (internal quotation marks and citations omitted).  Second, the prison

3    official must subjectively have a sufficiently culpable state of mind, "one of deliberate

4    indifference to inmate health or safety." Id. (internal quotation marks and citations omitted).

5    This second prong... "is satisfied by showing (a) a purposeful act or failure to respond to a

6    prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner,

7    439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks

8    omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR,

9    726 F.3d 1062, 1081 (9th Cir. 2013).

10          Serious medical need can be shown by demonstrating that a failure to treat a prisoner

11   could result in significant injury or worsening pain.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.

12   2006).  A deliberately indifferent response can be shown by a purposeful act or failure to respond

13   to a prisoner's pain or possible medical need coupled with harm caused by that indifference.  Id.

14          Whether a defendant had requisite knowledge of a substantial risk of harm is a question of

15   fact.  Farmer, 511 U.S. at 842.  Thus, liability may be avoided by presenting evidence that the

16   defendant lacked knowledge of the risk and/or that his response was reasonable in light of all the

17   circumstances. See Farmer, 511 U.S. at 844–45; see also Simmons v. Navajo County Ariz. 609

18   F.3d 1011, 1017-18 (9th Cir. 2010) (requiring official be subjectively aware of serious medical

19   need and fail to adequately respond to need to establish deliberate indifference).

20          The official is not liable under the Eighth Amendment unless he "knows of and disregards

21   an excessive risk to inmate health or safety; the official must both be aware of facts from which

22   the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

23   the inference." Farmer, 511 U.S. at 837.  Then he must fail to take reasonable measures to abate

24   the substantial risk of serious harm.  Id. at 847.  Mere negligent failure to protect an inmate from

25   harm is not actionable under § 1983. See id. at 835.  "Mere negligent failure to protect an inmate

26   from harm does not violate the Cruel and Unusual Punishments Clause." Farmer, 511 U.S. at

27   835.

28

C.  Eighth Amendment Excessive Force

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (brackets added) (referencing Whitley v. Albers, 475 U.S. 312 (1986)).  Under the Eighth Amendment, a court looks for malicious and sadistic force, not merely objectively unreasonable force. Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002).

"[T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." Hudson, 503 U.S. at 7 (internal quotation marks omitted) (citing Whitley 475 U.S. at 321).  "When determining whether the use of force was wanton and unnecessary, evaluating the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response may also be proper to evaluate.  See Hudson, 503 U.S. at 7 (citation omitted). The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it. Hudson, 503 U.S. at 7.

"[N]ot every malevolent touch by a prison guard gives rise to a federal action." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (brackets added) (internal quotation marks omitted) (citing Hudson, 503 U.S. at 9).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Wilkins, 559 U.S. at 37-38 (citation omitted).  "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Id. at 38 (citations omitted) (internal quotation marks omitted).

1

2

3

4

5

6

While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9 (citing Whitley, 475 U.S. at 327). "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." Wilkins, 559 U.S. at 38.

7

VI.    DISCUSSION

8

A.  Claim One:  Failure to Protect

9

10

11

12

13

Plaintiff has made a threshold showing that Defendant Medina failed to protect him, when, on March 19, 2022, gas grenades were detonated on a nearby yard causing gas to spread to his yard causing immediate pain and unwarranted agony to Plaintiff's eyes, lungs and skin—followed by Plaintiff being left on the yard for 20 minutes while the gas dissipated, all this while Plaintiff was confined and locked in a caged area unable to escape from exposure to the chemical gas.

14

15

16

17

18

19

These facts as alleged support a finding that the detonation of the chemical gas on a nearby yard , which spread to Plaintiff's yard while Plaintiff was locked up and caged and could not remove himself from the spread of the gas, was sufficiently serious, and that Defendant Medina's failure to act to assist Plaintiff by removing him from the situation, instead letting him sit in the chemical gas air for twenty minutes, was done with a sufficiently culpable state of mind. See Hearns, 413 F.3d at 1040.

20

21

For these reasons, Plaintiff has stated a viable Eighth Amendment failure to protect claim against Defendant Medina.  Accordingly, she will be directed to file a response to it.

22

B.  Claim Two:  Deliberate Indifference to Serious Medical Need

23

24

25

26

27

28

Plaintiff has also stated a viable Eighth Amendment deliberate indifference to serious medical need claim against Defendant Medina.  According to Plaintiff, after he was exposed to the chemical gas on the yard for twenty minutes, he was in pain – e.g., his eyes and skin were burning, and he was having breathing problems.  ECF No. 18 at 4-5.  He says that he told Defendant Medina this, and he asked her for help.  Id.  However, she purportedly refused to help Plaintiff so that he could be

1   decontaminated, and she also refused to call for medical help so that someone else could assist

2   with his medical needs.  See ECF No. 18 at 4.  Instead, she laughed, retreated to a program office

3   with other prison officials forced him to return to his cell.  Id. at 4-5.  As a result, Plaintiff says he

4   remained without medical care for four days all while covered with the burning chemical gas

5   substance.  Id.

6          These alleged facts show that Plaintiff was suffering from a serious medical need to be

7   treated for exposure to the chemical gas that had been released on a nearby yard and had spread to

8   his yard, and that despite Defendant Medina being aware of Plaintiff's need, she appears to have

9   intentionally failed to respond to it.  Because her knowing failure to respond to Plaintiff's medical

10  need led to Plaintiff being in prolonged pain and discomfort, a threshold Eighth Amendment

11  deliberate indifference to serious medical need claim has been raised by Plaintiff.  Therefore,

12  Defendant Medina will also be ordered to file a response to this claim as well.

13                    C.  Claim Three:  "Torture" / Excessive Force

14          The Court notes for the record that Claim Three in Plaintiff's complaint alleges "torture"

15  on the part of Defendant Medina, and that thereafter, Plaintiff provides virtually identical facts in

16  the complaint that he had previously raised in his Claim Two deliberate indifference argument.

17  Compare ECF No. 18 at 4 (Claim Two), with ECF No. 18 at 5 (Claim Three).  Of greater import,

18  however, is the lack of factual support for a "torture" claim in Claim Three.  Specifically, the

19  Court notes that in the complaint, Plaintiff clearly states that on the date in question, *CN gas was*

20  *deployed in 3C Yard, and that the chemicals from it then spread to 3B Yard, where he had been*

21  *placed in a caged area.*  See ECF No. 18 at 3 (Claim One).

22          Even though Plaintiff consistently alleges throughout the complaint that he was "tortured"

23  by Defendant Medina – which could, for the sake of argument, be construed as an excessive force

24  claim – the facts that Plaintiff provides in Claim Three fail to provide any evidence of this.  See

25  generally ECF No. 18 at 5.  Specifically, nowhere in Claim Three – or anywhere else in the SAC

26  – does Plaintiff contend that *it was Defendant Medina who improperly ordered the detonation of*

27  *the CN gas in 3C Yard, and/or that she did so deliberately and with the specific, improper intent*

28  *to cause Plaintiff and the other inmates harm in 3B Yard.*  See generally ECF No. 18 at 3-5

1   (Claims One, Two and Three). On the contrary, it appears that the CN gas was likely released on

2   nearby 3C Yard as a security measure and that Plaintiff – who was confined22cv in 3B Yard at

3   the time – ended up inadvertently being affected by the spread of the gas to his area.

4          Based on these facts, it cannot be said that Plaintiff's exposure to the CN gas constituted

5   "torture" or excessive force on the part of Defendant Medina in violation of Plaintiff's Eighth

6   Amendment rights under the Cruel and Unusual Punishments Clause. The level of malicious

7   intent on the part of Defendant Medina with respect to the detonation of the CN gas in another

8   prison yard, or its subsequent spread to 3B Yard, is factually unsupported.

9          In addition, the fact that Plaintiff – and all the other inmates – were left on the yard for

10  twenty minutes, while unfortunate, also fails to support Plaintiff's "torture" / excessive force

11  claim. Arguably, if CN gas had to be detonated on another yard in all likelihood there was a

12  security issue at the prison, and again, *Plaintiff makes no assertion that the CN gas was ordered*

13  *released by Defendant Medina or by anyone else at her direction*. Such a situation may, in turn,

14  have required that everyone on the prison yards remain in place while the security issue on 3C

15  Yard had been addressed. If this was the case, Defendant Medina requiring all inmates to stay

16  put, despite the spread of the CN gas, could reasonably be said to have been force applied in a

17  good faith effort to maintain or restore discipline, instead of a measure that was taken maliciously

18  and sadistically on her part for the very purpose of causing harm. See Whitley, 475 U.S. at 320-

19  21.

20         Furthermore, Plaintiff points to no statements made by Defendant Medina which indicate

21  that her leaving all the inmates on the yard for twenty minutes was done with malintent. Courts

22  regularly defer to prison officials' decisions on internal matters. See, e.g., Sandin v. Conner, 515

23  U.S. 472, 482 (1995) ("[F]ederal courts ought to afford appropriate deference and flexibility to

24  state officials trying to manage a volatile environment."); Wolff v. McDonnell, 418 U.S. 539, 566

25  (1974) ("We should not be too ready to exercise oversight and put aside the judgment of prison

26  administrators.").

27         For these reasons, the Court finds that Plaintiff's "torture" / excessive force claim fails to

28  state a claim upon which relief may be granted. Furthermore, the supporting facts that Plaintiff

1    has provided in his SAC for Claim Three, coupled with the fact that his motion for

2    reconsideration failed to provide any new facts to support a viable Claim Three, lead this Court to

3    find that providing Plaintiff with yet another opportunity to amend the complaint would be futile.

4    See Wheeler v. City of Santa Clara, 894 F.3d 1046, 1059 (9th Cir. 2018) (stating grant of leave to

5    amend is properly denied if amending complaint would be futile); Carrico v. City & Cty. of San

6    Francisco., 656 F.3d 1002, 1008 (9th Cir. 2011) (stating dismissal of complaint without leave to

7    amend is permissible if amendment would be futile).  For these reasons, the undersigned will

8    recommend that Claim Three be dismissed.

9          Accordingly, IT IS HEREBY ORDERED that:

10         1.  The Clerk of Court shall randomly ASSIGN a District Judge to this matter, and

11         2.  The Court's September 2, 2025, screening order for the second amended complaint

12    (ECF No. 19), as well as the related service order (ECF No. 20), are hereby VACATED;

13         3.  Plaintiff's second amended complaint raises viable Eighth Amendment failure to

14    protect and deliberate indifference to serious medical needs claims (Claims One and Two) against

15    Defendant Samantha Medina, a supervising officer at California State Prison – Corcoran, that

16    may be served and

17         4.  Plaintiff's second amended complaint fails to raise a viable Eighth Amendment

18    excessive force / "torture" claim (Claim Three) against Defendant Samantha Medina, and it

19    cannot be served.

20         IT IS FURTHER RECOMMENDED that Plaintiff's "torture" / excessive force claim

21    raised in Claim Three of the second amended complaint (see ECF No. 18 at 5) be DISMISSED

22    for failure to state a claim upon which relief may be granted.  See 28 U.S.C. § 1915A(b)(1).

23         These findings and recommendations are submitted to the United States District Judge

24    assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

25    after being served with these findings and recommendations, Plaintiff may file written objections

26    with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings

27    and Recommendations," and it shall not exceed fifteen pages.

28

The Court will not consider exhibits attached to the objections.  To the extent that Plaintiff wishes to refer to any exhibit, when possible, Plaintiff must reference the exhibit in the record by its CM/ECF document and page number or reference the exhibit with specificity.  Any pages filed in excess of the fifteen-page limit may be disregarded by the District Judge when conducting the 28 U.S.C. § 636(b)(l)(C) review of the findings and recommendations.  Plaintiff's failure to file objections within the specified time may result in the waiver of certain rights on appeal.  <u>See</u> <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014); <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __September 23, 2025__            _____/s/ Gary S. Austin__
                                         UNITED STATES MAGISTRATE JUDGE

14